UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROYAL BANKS OF MISSOURI, a Missouri state-chartered bank, RICHARD L. STRILER, as Receiver for MISSIONARY VENTURES, LLC, and OBLATE SHRINES AND RENEWAL CENTERS, INC., a Massachusetts not-for-profit corporation, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF BELLEVILLE, ILLINOIS <br><br> Defendant. | Case No. 25-cv-00933-JPG |

**MEMORANDUM AND ORDER**

This case is before the Court on Defendant City of Belleville ("the City")'s Motion to Dismiss (Doc. 14). Defendant asks the Court to dismiss all seven counts of Plaintiffs Royal Banks of Missouri ("Royal Banks"), Richard L. Striler as Receiver of Missionary Ventures ("the Receiver"), and Oblate Shrines and Renewal Centers ("Oblate Shrines")'s complaint for failure to state a claim. Plaintiffs filed a response (Doc. 17), and Defendant filed a reply (Doc. 19).

**I.     BACKGROUND**

Plaintiffs allege the following facts in their Complaint (Doc. 1). On December 16, 2014, Missionary Ventures ("Missionary") (as Tenant) entered into a Ground Lease with Oblate Shrines (as Landlord) concerning a 33-acre development in Belleville, Illinois ("the Property"). The Property is also subject to a Redevelopment Agreement, dated September 8, 2015, between the City and Missionary. In preparation for the development of the Property, the City and Oblate Shrines entered into an Annexation Agreement dated March 1, 2015. Under the Annexation Agreement, the Property was annexed to the City for the purpose of constructing hotels,

convenience stores, and restaurants subject to the Redevelopment Agreement.

Pursuant to the Redevelopment Agreement, the City collected Incremental Property Tax Revenues and Business District Sales Tax Revenues ("the Tax Incentives"). The funds for the Tax Incentives came primarily from loan proceeds and advances by Royal Banks including its payment of real estate taxes and advances to the Receiver to operate the Hofbräuhaus Restaurant. The City is merely a repository for the Tax Incentives and is obligated to reimburse Missionary for Redevelopment Project Costs from "Pledged Revenues," which include Missionary's share of the Tax Incentives. The Redevelopment Agreement expressly provides for periodic reimbursement of Project Costs to Missionary. The estimated total Redevelopment Project Costs were $32,365,000.

After the City and Missionary executed the Redevelopment Agreement, Missionary undertook development of the Property, and Royal Banks approved loans totaling over $20 million to finance the development. In addition, Missionary constructed the Hofbräuhaus Restaurant that was actively operated by Missionary and the Receiver from April 2019 to February 2023. The City received substantial property tax and sales tax revenues from the development of the Property and the operation of the Hofbräuhaus Restaurant. As of November 2024, the City is holding at least $748,100.03 in Tax Incentives.

On October 27, 2017, Missionary and Royal Banks entered into an Assignment of Redevelopment Agreement. In the contract, Missionary assigned its rights and interests in the Redevelopment Agreement to Royal Banks as collateral for its loan. On December 6, 2019, the St. Louis County Circuit Court entered an Order Appointing Receiver, which was later amended on January 27, 2021, appointing William Guy Crouch as the general Receiver over Missionary

and the other borrowers, and as a limited Receiver over the Collateral. On March 9, 2023, an Order substituting Richard L. Striler as Receiver was entered by the St. Louis County Circuit Court.

On June 24, 2022, Royal Banks and the Receiver submitted to the City the documents necessary to obtain the disbursement of the Tax Incentives, including a Certificate of Reimbursable Redevelopment Project Costs and a Certificate of Substantial Completion ("the First Disbursement Request"). In a letter dated October 6, 2022, the City denied the Developer's Certificates and refused to disburse any of the Tax Incentives, alleging that Missionary failed to construct improvements on the Property in accordance with timelines in the Developer's Proposal. Royal Banks and the Receiver sent another request on May 14, 2024, that included the necessary documents ("the Second Disbursement Request"). The City again denied the request and refused to disburse the Tax Incentives, citing the failure of Missionary to construct improvements in accordance with timelines in the Developer's Proposal.

The City did not provide Missionary, the Receiver, or Royal Banks any notice of default with respect to its allegation that Missionary failed to construct improvements on the Property in accordance with timelines as required by the Redevelopment Agreement. In addition, it did not give Missionary, the Receiver, or Royal Banks an opportunity to cure or remedy any alleged default, and did not institute proceedings as may be necessary or desirable to cure or remedy such default. Plaintiffs were unaware of the City's argument that there was an alleged default with respect to the Redevelopment Agreement until the City made the argument in its response to the First Disbursement Request. On June 14, 2024, Royal Banks and the Receiver sent a letter that formally notified the City of its default and breach of the Redevelopment Agreement ("the

3

Notice of Default"). The City never responded to the Notice of Default and did not cure or remedy the default.

Subsequently, on July 23, 2024, Royal Banks and the Receiver filed a third-party complaint in the St. Clair County Circuit Court against the City to seek the release of the Tax Incentives. The City filed a motion to dismiss the complaint. Shortly after, the Receiver filed a motion for turnover of estate property, seeking turnover of the Tax Incentives. On April 22, 2025, the state court judge entered an order granting the City's motion to dismiss without prejudice and denying the turnover motion. In relevant part, she held that "the rights of the parties with respect to the subject funds must be determined based upon evidence adduced through discovery, and considering claims and defenses thereto, in a separate legal action not simply by a non-evidentiary, summary proceeding." Less than a month later, on May 14, 2025, Royal Banks, the Receiver, and Oblate Shrines filed a complaint in this Court. The complaint alleges seven causes of action against the Defendant, including claims of breach of contract, specific performance, writ of mandamus, estoppel, deprivation of substantive due process under 42 U.S.C. § 1983, and deprivation of procedural due process under 42 U.S.C. § 1983.

## II.  LEGAL STANDARD

### A. Rule 12(b)(6) Dismissal Standard:

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This requirement is satisfied if the complaint

4

(1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl. Corp.*, 550 U.S. at 555; *EEOC. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp.*, 550 U.S. at 556). Although liberal federal notice pleading standards ensure that even non-detailed complaints can survive a motion to dismiss, they will not prevent dismissal of complaints that plead too much. A case can be dismissed because a complaint pleads facts establishing that the plaintiff is not entitled to prevail. *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998); *Soo Line R.R. Co. v. St. Louis Sw. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997).

### III.   ANALYSIS

   A.   Count 1 – Breach of Contract Claim by Royal Banks and the Receiver:

"In order to plead a cause of action for breach of contract, a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. Ct. 2004). The Court finds that Royal Banks and the Receiver have stated a claim for breach of contract. First, they allege that a valid and enforceable contract—the Redevelopment Agreement—governed the relationship between them and Defendant.

Second, they claim that they substantially performed under contract. Defendant argues that it is clear, based on the allegations in the complaint, that Royal Banks and the Receiver

neither performed nor complied with the Redevelopment Agreement. Specifically, Defendant alleges that they "failed to construct their improvements in the Redevelopment Project Area consistent with the Developer's Proposal and in accordance with the timelines therein, as required by Section 3.5 of the Redevelopment Agreement." Defendant argues that the "Developer's Proposal" means the "Revised Development Plan" submitted by Missionary to the City on September 1, 2015. That document included a spreadsheet with timelines for the project. Defendant argues that, because the project was not completed in accordance with the deadlines in the attached spreadsheet, Royal Bank and the Receiver did not fulfill their obligations under the Redevelopment Agreement.

      The Court disagrees. At this stage, Royal Banks and the Receiver have alleged sufficient facts to show substantial performance. For starters, the timelines in the attached spreadsheet state that they are projected dates. In other words, they are not final deadlines. In addition, even if they were final deadlines, there is evidence that Defendant waived them. The proposed deadlines required five of the entities to be complete and open by July 20, 2016. However, Defendant did not mention the failure to comply with the proposed deadlines until October 6, 2022. Further, the Redevelopment Plan, which is expressly referenced in the Redevelopment Agreement and incorporated as Exhibit A, states that the estimated date for completion of the Redevelopment Project shall be no later than December 31, 2028. Finally, Royal Banks and the Receiver have invested $20 million into the Property. These facts, taken together, allow the Court to reasonably infer that Royal Banks and the Receiver have substantially performed under the contract.

      Third, Royal Banks and the Receiver allege that Defendant breached the contract because it failed to disburse the Tax Incentives as required under the Redevelopment Agreement. The

6

Redevelopment Agreement states that the City will reimburse Missionary for "authorized Reimbursable Redevelopment Project Costs" and the total reimbursement will be approximately $32,365,000. It requires the City, upon receipt of a Certificate of Reimbursable Redevelopment Project Costs and itemized invoices or receipts evidencing the amount requested, to "make periodic reimbursement payments as Pledged Revenues." However, it also states that the "City is not obligated to approve any Certificate of Reimbursable Redevelopment Project Costs [if] the submitting party is in default under the terms of" the Redevelopment Agreement. Defendant argues that it is not required to pay the Tax Incentives because Royal Banks and the Receiver are in default. But as described above, Royal Banks and the Receiver have alleged sufficient facts to show substantial compliance with the contract. Therefore, they have also alleged sufficient facts to show that Defendant breached the Redevelopment Agreement by not reimbursing the project costs upon Royal Banks and the Receiver's submission of the required documentation.

Fourth, Royal Banks and the Receiver have alleged resultant damages, including but not limited to "[t]he City's refusal to disburse the Tax Incentives in the amount of at least $748,100.03 (as of November 2024)" and their lost ability "to develop the Property and recover Redevelopment Costs associated with the Development in the total sum of $32,365,000.00." Since Royal Banks and the Receiver have alleged a plausible claim for breach of contract, the Court will allow this claim to proceed against Defendant.

B.  <u>Count 2 – Breach of Contract Claim by Oblate Shrines:</u>

Oblate Shrines is not a party to the Redevelopment Agreement. As such, it may only sue under the contract if it is an intended beneficiary. *See Carlson v. Rehab. Inst. of Chicago*, 50 N.E.3d 1250, 1256 (Ill. App. Ct. 2016). "An intended beneficiary is intended by the parties to the

contract to directly benefit [from] the performance of the agreement." *Id.* In Illinois, "[t]here is a strong presumption that the parties to a contract intend that the contract's provisions apply only to them, and not to third parties." *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 924 (Ill. App. Ct. 2009). "In order to overcome that presumption, the implication that the contract applies to third parties must be so strong as to be practically an express declaration." *155 Harbor Drive Condo. Ass'n v. Harbor Point Inc.*, 568 N.E.2d 365, 375 (Ill. App. Ct. 1991). Oblate Shrines "has the burden of proving that [the parties to the Redevelopment Agreement] intended to confer a direct benefit upon [it]." *Id.*

The Court concludes that Oblate Shrines has failed to meet its burden. The complaint contains only a conclusory allegation that Oblate Shrines is "a third-party beneficiary of the Redevelopment Agreement." That is not sufficient. In addition, the Court rejects Plaintiffs argument that Oblate Shrine's is an intended beneficiary under the contract because the Annexation Agreement between the City and Oblate Shrines was an express prerequisite to the Redevelopment Agreement. The two parties to the Redevelopment Agreement, the City and Missionary, entered into the Redevelopment Agreement for their own benefit. Plaintiffs have not alleged that the City or Missionary intended the Redevelopment Agreement to directly benefit Oblate Shrines. "Logically, an owner will always benefit from any work done on his property." *Ball Corp. v. Bohlin Bldg. Corp.*, 543 N.E.2d 106, 108 (Ill. App. Ct. 1989). But "that benefit is merely incidental to the" Redevelopment Agreement between the City and Missionary. *Id.* Since Oblate Shrines has failed to allege sufficient facts for the Court to reasonably conclude that it is an intended beneficiary of the Redevelopment Agreement, the Court will dismiss this claim without prejudice.

C. Count 3 – Specific Performance Claim by Royal Banks and the Receiver:

To state a claim for specific performance, a plaintiff must allege "(1) the existence of a valid, binding, and enforceable contract; (2) compliance by the plaintiff with the terms of the contract, or proof that the plaintiff is ready, willing, and able to perform the contract; and (3) the failure or refusal of the defendant to perform his part of the contract." *Hoxha v. LaSalle Nat. Bank*, 847 N.E.2d 725, 729 (Ill. App. Ct. 2006). As discussed above, Royal Banks and the Receiver have alleged that there is a valid and enforceable contract—the Redevelopment Agreement—that governs the relationship between them and Defendant, they substantially complied with the contract by investing $20 million into the Property, and Defendant failed to perform under the contract by refusing to disburse the Tax Incentives to them. Those allegations are sufficient to state a claim for specific performance. The Court will allow this claim to proceed.

D. Count 4 – Writ of Mandamus Claim by Royal Banks and the Receiver:

To state a claim for a writ of mandamus, a plaintiff must allege "(1) a clear right to the relief requested, (2) a clear duty of the public official to act, and (3) clear authority in the public official to comply with the writ." *Beauchamp v. Dart*, 207 N.E.3d 1118, 1122 (Ill. App. Ct. 2022). "A plaintiff must set forth every material fact necessary to show he or she is entitled to a writ of *mandamus*, and the plaintiff bears the burden to establish a clear, legal right to it." *Lucas v. Taylor*, 812 N.E.2d 72, 75 (Ill. App. Ct. 2004). Royal Banks and the Receiver have stated a claim for writ of mandamus. First, as established above, Royal Banks and the Receiver have alleged sufficient facts to show substantial performance under the Redevelopment Agreement. As such, they have alleged a clear right to disbursement of the Tax Incentives. Second, they have

9

alleged that the Redevelopment Agreement creates a clear duty of Defendant to act. It requires the City to disburse the Tax Incentives upon receipt of a Certificate of Reimbursable Redevelopment Project Costs that is accompanied by itemized invoices or receipts evidencing the amount requested. Royal Banks and the Receiver delivered the required documentation upon the City. As a result, Defendant was obligated to disburse the Tax Incentives. Third, Defendant has authority to comply with the writ. The Redevelopment Agreement, along with the related ordinances, give Defendant the authority to disburse the Tax Incentives to Royal Banks and the Receiver.

Defendant argues that Royal Banks and the Receiver are barred from asserting a claim for writ of mandamus by the doctrine of laches. "Generally, a party asserting the defense of *laches* must prove (1) the lack of due diligence by the party asserting the claim and (2) prejudice to the party asserting the defense." *Tolbert v. Godinez*, 142 N.E.3d 415, 420 (Ill. App. Ct. 2020). Due diligence requires that a writ of mandamus be "brought within six months unless there is a reasonable explanation for delay." *Caruth v. Quinley*, 775 N.E.2d 224, 228 (Ill. App. Ct. 2002). This claim was not brought within six months after Defendant first refused to disburse the funds. However, the complaint alleges diligence by Royal Banks and the Receiver in pursuing their remedies. In addition, Defendant has not alleged facts to show that it will suffer any prejudice from allowing Royal Banks and the Receiver to proceed with this claim. It just says that "prejudice is inherent." But that is not sufficient to assert the defense of laches. Royal Banks and the Receiver have alleged sufficient facts to state a claim for writ of mandamus and Defendant has failed to establish a defense of laches. Therefore, this claim will proceed.

 E. <u>Count 5 – Estoppel Claim by Royal Banks, the Receiver, and Oblate Shrines:</u>

"[A] plaintiff seeking to invoke equitable estoppel against a municipality must plead specific facts that show (1) an affirmative act by either the municipality itself or an official with express authority to bind the municipality; and (2) reasonable reliance upon that act by the plaintiff that induces the plaintiff to detrimentally change its position." *Patrick Eng'g, Inc. v. City of Naperville*, 976 N.E.2d 318, 331 (Ill. 2012). "The act must be affirmative, but may be either an act by the municipality itself, such as legislation, or an act by an official with express authority to bind the municipality." *Id.* "Estoppel against public bodies is not favored, and exceptional circumstances are required before the doctrine will be invoked." *Monarch Gas Co. v. Illinois Com. Comm'n*, 366 N.E.2d 945, 949 (Ill. App. Ct. 1977). The doctrine will be "invoked against a public body only when it is necessary to prevent fraud and injustice." *Halleck v. Cnty. of Cook*, 637 N.E.2d 1110, 1114 (Ill. App. Ct. 1994).

Here, Royal Banks and the Receiver allege numerous affirmative acts by the Defendant, including that it "entered and executed the Redevelopment Agreement." In addition, they allege that, because of Defendant's execution of the Redevelopment Agreement, they were induced into spending more than $20 million to develop and operate the Property. Therefore, Royal Banks and the Receiver have alleged sufficient facts to establish both elements of estoppel. However, Oblate Shrines fails to state a claim for estoppel. The complaint does not allege that Oblate Shrines was induced to detrimentally change its position. It merely states that, "[a]s a direct consequence of the foregoing affirmative acts by the City, the Developer, Royal Banks, and the Receiver were induced into expending more than $20 million to develop and operate the Property." That allegation is not sufficient to show reliance by Oblate Shrines.

Defendant argues that Plaintiffs have not shown there are rare and unusual circumstances

11

warranting the extraordinary doctrine of estoppel. The Court disagrees. The allegations in the complaint show that there is a potential for injustice. Royal Banks and the Receiver claim that they have invested $20 million into the Property and have not received $748,100.03 in Tax Incentives that are owed to them. At this stage, those facts are sufficient to show that that there are exceptional circumstances that warrant the application of estoppel. The Court finds that Royal Banks and the Receiver have pled sufficient facts to state a claim, but Oblate Shrines has not. Accordingly, it will allow Royal Banks and the Receiver to proceed on this claim and will dismiss Oblate Shrines's claim without prejudice.

  F. <u>Count 6 – Deprivation of Substantive Due Process Under 42 U.S.C. § 1983 Claim by Royal Banks, the Receiver, and Oblate Shrines:</u>

To state a claim against a municipality under § 1983, a plaintiff must plead facts that allow the Court to draw a reasonable inference that the municipality had a policy, custom, or widespread practice that caused the constitutional violation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). A claim for deprivation of substantive due process requires a plaintiff to "allege that the government violated a fundamental right or liberty," and that the violation was "arbitrary and irrational." *Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th Cir. 2019). Plaintiffs allege that the decision of Defendant "to refuse to disburse the Tax Incentives and to refuse to honor the Redevelopment Agreement was arbitrary, capricious, truly irrational, and without due process," and "deprived Plaintiffs of substantive rights, privileges, and immunities secured by the Constitution and 42 U.S.C. § 1983." They believe that, since they fulfilled their obligations under the Redevelopment Agreement, the Tax Incentives are a vested property interest that is protected by the Due Process Clause.

  The Court finds that Plaintiffs have failed to state a claim for deprivation of substantive

due process. The scope of the substantive due process doctrine is very limited. *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003). The Seventh Circuit has held, numerous times, that "mere breaches of contract by the government do not support substantive due process claims under the Constitution." *Taake v. Cnty. of Monroe*, 530 F.3d 538, 542 (7th Cir. 2008). Plaintiffs argue that this case involves more than a mere breach of contract because they had a vested property interest in the Tax Incentives. But "when a substantive-due-process challenge involves only the deprivation of a property interest," a plaintiff "must show as an initial matter either that state-law remedies are inadequate or that an independent constitutional right has been violated." *Lee*, 330 F.3d at 467. Plaintiffs have not made either showing. Therefore, they have failed to state a claim for deprivation of substantive due process under § 1983, and this claim will be dismissed without prejudice.

  G. <u>Count 7 – Deprivation of Procedural Due Process Under 42 U.S.C. § 1983 Claim by Royal Banks, the Receiver, and Oblate Shrines:</u>

"To demonstrate a procedural due process violation of a property right, the plaintiff must establish that there is '(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process.'" *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) (quoting *Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004)). To have a constitutionally protected property interest, "an individual must have a 'legitimate claim of entitlement to it.'" *Kim Const. Co. v. Bd. of Trs. of Vill. of Mundelein*, 14 F.3d 1243, 1245 (7th Cir. 1994) (quoting *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). "A property interest for purposes of the Due Process Clause is created by 'existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Id.* (quoting

13

*Roth*, 408 U.S. at 577).

"A person's interest in a government benefit is recognized as a due process property interest where the individual has a legitimate claim or entitlement to the benefit upon the satisfaction of legally enumerated uniform criteria set forth in state or federal law, local ordinances, or mutually explicit understandings." *Interstate Material Corp. v. City of Chicago*, 501 N.E.2d 910, 915 (Ill. App. Ct. 1986) (citing *Roth*, 408 U.S. 564; *Graham v. Richardson*, 403 U.S. 365 (1971)). A vested right has been defined as:

> something more than a mere expectation, based upon an anticipated continuance of the existing law, and it must have become a title, legal or equitable, to the present or future enjoyment of property, or to the present or future enjoyment of the demand, or a legal exception from a demand made by another.

*Harraz v. Snyder*, 669 N.E.2d 911, 916 (Ill. App. Ct. 1996).

Royal Banks and the Receiver have alleged sufficient facts to state a claim for deprivation of procedural due process. First, they allege that they have a vested property interest in the Tax Incentives. The Redevelopment Agreement provides that the Tax Incentives accrue on a yearly basis and are to be disbursed periodically until all Redevelopment Project Costs have been reimbursed. Royal Banks and the Receiver allege that they submitted the required documentation to the City to receive the Tax Incentives. In short, they allege that they satisfied the requirements to receive the Tax Incentives, so their property interest in the Tax Incentives is vested and the City is bound to disburse them. Second, they have alleged that a deprivation occurred. The City has failed to disburse the Tax Incentives to Royal Banks and the Receiver. Third, they allege that the deprivation occurred without due process. Defendant failed to give Plaintiffs notice of default or a right to cure as required by the Redevelopment Agreement. However, the Court finds that Oblate Shrines has failed to state a claim for deprivation of

14

procedural due process. Oblate Shrines argues that it its "interest in the Property under the Annexation Agreement, Ground Lease, and Ordinances is a vested interest that is directly affected by the City's failure to disburse the Tax Incentives." But that is not sufficient to state a claim. Oblate Shrines must allege facts that show it has been deprived of a property interest. It has not done so.

Defendant argues that Plaintiffs cannot state a claim for deprivation of procedural due process because their complaint seeks only monetary damages, without any request for notice and an opportunity to be heard. To support their argument, they cite to *Taake*. However, the Seventh Circuit has clarified that is not the message of *Takke*. *See Luster v. Vill. of Ashmore*, 76 F.4th 535, 538 (7th Cir. 2023) (finding that the district court erred in saying "that a plaintiff who seeks only damages does not state a due process claim"). "When process is missing . . . damages can be a proper remedy under § 1983 when a violation of a constitutional right is proved." *Id.* (citing *Memphis Cmty. Sch. Dist. v.* Stachura, 477 U.S. 299, 307 (1986)). Therefore, the fact that the complaint is only seeking monetary damages does not bar a claim for deprivation of procedural due process. Royal Banks and the Receiver have alleged sufficient facts to state a claim for deprivation of procedural due process under § 1983, but Oblate Shrines has not. Therefore, the Court will allow Royal Banks and the Receiver to proceed on this claim and will dismiss Oblate Shrines's claim without prejudice.

I.     **CONCLUSION**

The Court finds that Plaintiffs have failed to allege that Oblate Shrines was an intended beneficiary of the Redevelopment Agreement, was induced to detrimentally change its position, or was deprived of a vested property interest. In addition, it finds that Plaintiffs allegations do not

support a claim for deprivation of substantive due process under 42 U.S.C. § 1983. As such, the Court GRANTS in part and DENIES in part Defendant City of Belleville's Motion to Dismiss (Doc. 14). It DISMISSES the following claims without prejudice: (1) Count 2 in its entirety, (2) Count 5 with respect to Oblate Shrines's claim against Defendant, (3) Count 6 in its entirety, and (4) Count 7 with respect to Oblate Shrines's claim against Defendant. Plaintiffs shall have up to and including January 9, 2026, to file an amended complaint.

**IT IS SO ORDERED.**
**DATED**:   **December 10, 2025**

                                                s/ J. Phil Gilbert
                                                **J. PHIL GILBERT**
                                                **United States District Judge**