UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ROYAL BANKS OF MISSOURI, a Missouri
state-chartered bank,
RICHARD L. STRILER, as Receiver for
MISSIONARY VENTURES, LLC, and
OBLATE SHRINES AND RENEWAL
CENTERS, INC., a Massachusetts not-for-profit
corporation,

       Plaintiffs,

    v.

CITY OF BELLEVILLE, ILLINOIS

       Defendant.

Case No. 25-cv-00933-JPG

## MEMORANDUM AND ORDER

This case is before the Court on Defendant City of Belleville's Motion to Dismiss (Doc. 37) and Motion to Strike (Doc. 73), Plaintiffs Royal Banks of Missouri ("Royal Banks"), Richard L. Striler as Receiver of Missionary Ventures ("the Receiver"), and Oblate Shrines and Renewal Centers ("Oblate Shrines")'s Motion to Strike (Doc. 64), and Royal Banks and the Receiver's Motion to Dismiss (Doc. 70).

## I.    BACKGROUND

A detailed recitation of the facts giving rise to this litigation were set out in the Court's Memorandum and Order entered December 10, 2025 (Doc. 26). The Court will give only a short summary here.

This case concerns a 33-acre development in Belleville, Illinois ("the Property"). Oblate Shrines and Defendant entered into an Annexation Agreement, under which the Property was annexed to Defendant for the purpose of constructing hotels, convenience stores, and restaurants.

Defendant then entered into the Redevelopment Agreement with Missionary Ventures ("Missionary"). The Redevelopment Agreement requires Defendant to collect Tax Incentives, act as a repository for those Tax Incentives, and then periodically reimburse those Tax Incentives to Missionary as it incurs Project Costs. As of November 2024, Defendant is holding at least $748,100.03 in Tax Incentives. Royal Banks is entitled to the Tax Incentives by assignment, and the Receiver is entitled to the Tax Incentives by court appointment.

Royal Banks and the Receiver have submitted two requests to Defendant asking it to disburse the Tax Incentives. Defendant denied the requests and refused to disburse the Tax Incentives, alleging that Missionary was in breach of the Redevelopment Agreement because it had failed to construct improvements on the Property in accordance with the timelines in the Developer's Proposal.

The parties attempted to execute an Amendment to the Development Schedule ("the Amendment"). The Amendment was approved by the city council on May 15, 2023. However, Royal Banks and the Receiver have never executed the Amendment.

Plaintiff's amended complaint was filed January 12, 2026. It asserts seven claims against Defendant: (1) breach of contract claim by Royal Banks and the Receiver; (2) breach of contract claim by Oblate Shrines; (3) specific performance by Royal Banks and the Receiver; (4) writ of mandamus by Royal Banks and the Receiver; (5) estoppel by Royal Banks, the Receiver, and Oblate Shrines; (6) deprivation of procedural due process by Royal Banks and the Receiver; and (7) deprivation of procedural due process by Oblate Shrines.

Defendant has filed an amended answer, which asserts numerous defenses to Plaintiffs' claims. It also filed an amended counterclaim, which asserts three claims against Royal Banks

and the Receiver: (1) breach of contract; (2) equitable estoppel; and (3) fraudulent misrepresentation.

## II.   ANALYSIS

### A.  Motions to Dismiss:

#### i.  Legal Standard:

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl. Corp.*, 550 U.S. at 555; *EEOC. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp.*, 550 U.S. at 556). Although liberal federal notice pleading standards ensure that even non-detailed complaints can survive a motion to dismiss, they will not prevent dismissal of complaints that plead too much. A case can be dismissed because a complaint pleads facts establishing that the plaintiff is not entitled to prevail. *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998); *Soo Line R.R. Co. v. St. Louis Sw. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997).

ii.   *Defendant's Motion to Dismiss (Doc. 37):*

Defendant asks the Court to dismiss all three of Oblate Shrines's claims for failure to state a claim. Oblate Shrines filed a response (Doc. 59), and Defendant filed a reply (Doc. 62).

1.   Count 2 – Breach of Contract:

"In order to plead a cause of action for breach of contract, a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. Ct. 2004).

Oblate Shrines has stated a claim for breach of contract. First, it alleges the existence of a valid and enforceable contract—the Annexation Agreement—that governs the relationship between Oblate Shrines and Defendant. Second, it alleges that it has substantially performed under the contract by: (1) permitting the annexation of the Property to Defendant; (2) authorizing the rezoning and reclassification of the Property; and (3) consenting to the levy and imposition of additional taxes for the Property. Third, it alleges numerous breaches by Defendant, including a breach of the "Mutual Assistance" provision. Fourth, it alleges resultant damages, including the loss of ability to develop the Property.

The Court does not believe this is another attempt by Oblate Shrines to assert a breach of contract claim based upon the Redevelopment Agreement. Under the Annexation Agreement, Defendant was required to "do all things necessary or appropriate to carry out the terms and provisions of this Agreement and to aid and assist each other in carrying out the terms and objectives of this Agreement and the intentions of the Parties as reflected by said terms." At least one purpose of the Annexation Agreement was the successful development of the Property.

4

Oblate Shrines's allegations that Defendant failed to disburse the Tax Incentives and made false statements to prospective developers that the Redevelopment Agreement was no longer in effect, which have left the project halted for years, are sufficient to allege a breach of the Annexation Agreement. The Court will allow this claim to proceed.

2. <u>Count 5 – Estoppel:</u>

"[A] plaintiff seeking to invoke equitable estoppel against a municipality must plead specific facts that show (1) an affirmative act by either the municipality itself or an official with express authority to bind the municipality; and (2) reasonable reliance upon that act by the plaintiff that induces the plaintiff to detrimentally change its position." *Patrick Eng'g, Inc. v. City of Naperville*, 976 N.E.2d 318, 331 (Ill. 2012). "The act must be affirmative, but may be either an act by the municipality itself, such as legislation, or an act by an official with express authority to bind the municipality." *Id.* "Estoppel against public bodies is not favored, and exceptional circumstances are required before the doctrine will be invoked." *Monarch Gas Co. v. Illinois Com. Comm'n*, 366 N.E.2d 945, 949 (Ill. App. Ct. 1977). The doctrine will be "invoked against a public body only when it is necessary to prevent fraud and injustice." *Halleck v. Cnty. of Cook*, 637 N.E.2d 1110, 1114 (Ill. App. Ct. 1994).

Oblate Shrines has stated a claim for estoppel. It alleges multiple affirmative acts by Defendant, including that it entered into the Annexation Agreement, and that as a result of these acts, it was induced to materially alter its position by, among other things, annexing the Property and permitting the development of the Property.[1] Further, the allegations in the amended

---

[1] The amended complaint does not *expressly* allege that Oblate Shrines was induced to detrimentally change its position. However, it includes numerous allegations specific to Oblate Shrines from which the Court can plausibly infer that it detrimentally changed its position in reliance on acts taken by Defendant. That is sufficient.

complaint show that there is potential for injustice. The development of the Property is partially complete, and a restaurant has been constructed. These improvements have increased the real estate taxes on the Property. If the development is never finished, the building and improvements will constitute a burden on Oblate Shrines without the benefits of the development. At this stage, the facts alleged are sufficient to show that there are exceptional circumstances that warrant the application of estoppel. As such, the Court will allow this claim to proceed.

### 3.   Count 7 – Procedural Due Process:

To state a claim against a municipality under § 1983, a plaintiff must plead facts that allow the Court to draw a reasonable inference that the municipality had a policy, custom, or widespread practice that caused the constitutional violation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). "To demonstrate a procedural due process violation of a property right, the plaintiff must establish that there is '(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process.'" *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) (quoting *Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004)). To have a constitutionally protected property interest, "an individual must have a 'legitimate claim of entitlement to it.'" *Kim Const. Co. v. Bd. of Trs. of Vill. of Mundelein*, 14 F.3d 1243, 1245 (7th Cir. 1994) (quoting *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).

"A property interest for purposes of the Due Process Clause is created by 'existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Id.* (quoting *Roth*, 408 U.S. at 577). "A person's interest in a government benefit is recognized as a due process property interest where the individual has a legitimate claim or

6

entitlement to the benefit upon the satisfaction of legally enumerated uniform criteria set forth in state or federal law, local ordinances, or mutually explicit understandings." *Interstate Material Corp. v. City of Chicago*, 501 N.E.2d 910, 915 (Ill. App. Ct. 1986) (citing *Roth*, 408 U.S. 564; *Graham v. Richardson*, 403 U.S. 365 (1971)). A vested right has been defined as:

> something more than a mere expectation, based upon an anticipated continuance of the existing law, and it must have become a title, legal or equitable, to the present or future enjoyment of property, or to the present or future enjoyment of the demand, or a legal exception from a demand made by another.

*Harraz v. Snyder*, 669 N.E.2d 911, 916 (Ill. App. Ct. 1996).

Oblate Shrines has failed to state claim for deprivation of procedural due process. First, the property interests alleged by Oblate Shrines are mere expectations. Under the Annexation Agreement, Defendant was required to diligently pursue "the approval of a redevelopment agreement." Based on this, Oblate Shrines expected that a redevelopment agreement would be approved, and the Property would be developed and generate rental income. However, the Annexation Agreement did not guarantee the approval of a redevelopment agreement, and it did not create a legitimate entitlement to the completion of the development or the generation of rental income.[2] Oblate Shrines's expectation is not sufficient to allege a vested property interest.

Second, Oblate Shrines has received all process that is required. "[T]he Constitution does not require state actors to keep their promises. It requires process before any state may finally deprive a person of liberty or property (including rights under a contract), but the opportunity to litigate in state court supplies all the process that is due for claims of breach." *Kay v. Bd. of*

---

[2] Further, many of the property interests alleged by Oblate Shrines were not deprived by Defendant. For example, Oblate Shrines alleges it had a property interest in the Zoom Lease. The Zoom Lease was a ground lease between Zoom and Oblate Shrines. It was Zoom, not Defendant, that deprived Oblate Shrines of rental income under the Zoom Lease.

*Educ. of City of Chicago*, 547 F.3d 736, 739 (7th Cir. 2008). Oblate Shrines can (and has) filed a claim against Defendant for breach of contract. That is sufficient to satisfy procedural due process.

Neither the Annexation Agreement nor 65 ILCS 5/11-15.1-2 change the outcome. To begin, the Annexation Agreement does not require Defendant to notify Oblate Shrines that Missionary was in default under the Redevelopment Agreement or that Defendant was making false statements to prospective developers that the Redevelopment Agreement was no longer in effect. It only requires that, in the event of a material breach of the Annexation Agreement, the party alleged to be in breach shall receive notice and an opportunity to cure. Defendant has never alleged that Oblate Shrines is in breach of the Annexation Agreement.

Further, 65 ILCS 5/11-15.1-2 does not set forth any process requirement. It states that: "[a]ny action taken by the corporate authorities during the period such agreement is in effect, which, if it applied to the land which is the subject of the agreement, would be a breach of such agreement, shall not apply to such land without an amendment of such agreement." This provision merely means that, while the Annexation Agreement remains in effect, municipal actions that conflict with the Annexation Agreement do not apply to the Property unless the Annexation Agreement is amended. *See French v. Vill. of Lincolnshire*, 335 N.E.2d 29, 32 (Ill. App. Ct. 1975). Since the Court finds that Oblate Shrines has not alleged a legitimate entitlement and has received all the process that is required, it will dismiss this claim with prejudice.

ii.   *Royal Banks and the Receiver's Motion to Dismiss (Doc. 70):*

Royal Banks and the Receiver ask the Court to dismiss the entirety of Defendant's amended counterclaim for failure to state a claim. Defendant filed a response (Doc. 80), and

8

Royal Banks and the Receiver filed a reply (Doc. 82).

1.   Count 1 – Breach of Contract:

As stated above, a breach of contract claim has four elements: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *W.W. Vincent & Co.*, 814 N.E.2d at 967.

Defendant has stated a claim for breach of contract. First, it alleges the existence of valid and enforceable contract—the Redevelopment Agreement—that governs the relationship between Defendant, Missionary, Royal Banks, and the Receiver. Second, it alleges that it has fully performed under the contract or, in the alternative, it is excused from performance due to a breach by Missionary, Royal Banks, and the Receiver. Third, it alleges that Missionary, Royal Banks, and the Receiver breached the contract by failing to construct improvements to the Property consistent with the Developer's Proposal and the timelines therein, as required by Section 3.5 of the Redevelopment Agreement. Fourth, it alleges resultant damages, including loss of revenue from the project. That is sufficient to state a claim for breach of contract.

Royal Banks and the Receiver argue that, on the face of the pleadings, Defendant cannot establish a breach of contract claim as a matter of law because the Redevelopment Agreement did not contain any enforceable deadlines. The Court disagrees. It is true that Section 3.5 of the Redevelopment Agreement does not contain dates, timelines, or deadlines. However, it does say that "[t]he Developer shall construct improvements in the Redevelopment Project Area consistent with the Developer's Proposal dated September 1, 2015, and the Concept Site Plan." Defendant alleges that the Developer's Proposal contained a spreadsheet with timelines. Even though the spreadsheet states that it contains "projected" dates, Defendant has pointed to other

9

facts from which the Court can plausibly infer that these dates were true deadlines.[3]  For example, it alleges that (1) Defendant's request for development proposals required that interested developers include in their proposal the general schedule for the proposed project; (2) as a result, the Developer's Proposal included a project schedule and a spreadsheet with timelines; and (3) Section 3.3 of the Redevelopment Agreement confirms that the Redevelopment Agreement contemplates a project/development schedule and states that any material change to such schedule requires Defendant's advance written consent. It also alleges facts to show that the date for completion of December 31, 2038, is not meant to be a real deadline and instead mirrors provisions from the Redevelopment Plan and the Illinois Tax Increment Allocation Redevelopment Act. These facts, taken as true and construed in the light most favorable to Defendant, are sufficient to get past the dismissal stage. *See Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 526 (7th Cir. 2022) (stating that, when the contract is ambiguous regarding the parties' intent, its interpretation is a question of fact that cannot be resolved on a motion to dismiss).

2.  Count 2 – Equitable Estoppel:

To state a claim for equitable estoppel, a party must plead facts to show that:

(1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other person intended or reasonably expected that the party claiming estoppel would act upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming

---

[3] In its prior dismissal order, the Court stated that "the timelines in the attached spreadsheet state that they are projected deadlines. In other words, they are not final deadlines." This statement was neither a holding nor a finding of fact. Instead, it reflected the allegations in Plaintiffs' complaint, which the Court was required to accept as true and construe in the light most favorable to Plaintiffs. Here, however, the Court must accept the allegations in Defendant's amended counterclaim as true and construe them in the light most favorable to Defendant.

10

estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof.

*Geddes v. Mill Creek Country Club, Inc.*, 751 N.E.2d 1150, 1157 (Ill. 2001). "The 'material facts' must be existing facts, not promises of future action." *Int'l Strategic Mktg., Inc. v. Zenith Int'l, S.A.*, No. 01 C 3614, 2004 WL 546998, at *2 (N.D. Ill. Mar. 17, 2004). An action taken in reliance on a future promise, as distinguished from an action taken in reliance on a misrepresentation of past or existing facts, cannot establish a claim of equitable estoppel. *Id.*

Defendant has failed to state a claim of equitable estoppel. Both the misrepresentations it claims were made by Royal Banks and the Receiver—that they would cure their default on the Redevelopment Agreement and would execute the Amendment—were promises to do something in the future. These promises are not sufficient to state a claim for equitable estoppel. Thus, the Court will dismiss this claim without prejudice.

### 3.   Count 3 – Fraudulent Misrepresentation:

To plead a claim of fraudulent misrepresentation, a plaintiff must allege the following elements:

> (1) [a] false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance.

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012) (quoting *Dloogatch v. Brincat*, 920 N.E.2d 1161, 1166 (Ill. App. Ct. 2009)). The false statement must relate to an existing or past event, not to a promise regarding future conduct. *See HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 682 (Ill. 1989).

Defendant has failed to state a claim for fraudulent misrepresentation. As stated above, the false statements that Defendant alleges were made by Royal Banks and the

11

Receiver constitute promises related to future conduct. These promises are not sufficient to state a claim for fraudulent misrepresentation. Therefore, the Court will dismiss this claim without prejudice.

B. Motions to Strike:

i. *Plaintiffs' Motion to Strike (Doc. 64):*

Plaintiffs ask the Court to strike Defendant's affirmative defenses 1, 3, and 4, other defenses 1 through 7, and reservation of additional defenses 1 through 4. Defendant filed a response (Doc. 72), and Plaintiffs filed a reply (Doc. 74).

Federal Rule of Civil Procedure 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are generally disfavored because they are often employed for the sole purpose of causing delay. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). For this reason, the Court will not strike matter from a pleading pursuant to Rule 12(f) "unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382 (3d ed.); *accord Estrada on behalf of Q.R. v. Pullen*, No. 23-CV-1142-SMY, 2023 WL 6465299, at *2 (S.D. Ill. Oct. 4, 2023). The burden on a motion to strike is upon the moving party. *See Vakharia v. Little Co. of Mary Hosp. & Health Care Ctrs.*, 2 F. Supp. 2d 1028, 1033 (N.D. Ill. 1998). This Court has "considerable discretion" in deciding whether to strike defenses under Rule 12(f). *See Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009).

Here, Plaintiffs have not met their burden to show that the affirmative defenses have no possible relation to this litigation or that they will cause them significant prejudice. And the Court, upon its own examination, does not see how they would make such a showing. All the defenses have some relation to this litigation, and it does not appear the defenses will cause Plaintiffs any prejudice. To begin, Plaintiffs have already articulated their arguments with respect to Defendant's defenses of laches, equitable estoppel, the doctrine of fraud, and failure to state a claim upon which relief can be granted. Further, Defendant's defenses that Plaintiffs will not be able to recover attorney's fees and that its obligations are limited by certain provisions of the Redevelopment Agreement will not require Plaintiffs to engage in burdensome discovery or expend significant time and resources. Finally, Defendant's reservation of affirmative defenses simply advises Plaintiffs that it may raise additional defenses later and makes clear that it will do so only with leave of court under Rule 15(a)(2).

Since Plaintiffs have failed to meet their burden under Rule 12(f), the Court will not strike any of the defenses that Defendant has asserted in its amended answer.

> ii. *Defendant's Motion to Strike (Doc. 73):*

Defendant asks the Court to strike Plaintiffs' avoidances to its affirmative defenses. Plaintiffs filed a response (Doc. 75).

As stated above, Rule 12(f) gives this Court discretion to strike "any redundant, immaterial, impertinent, or scandalous matter." Federal Rule of Civil Procedure 7(a) "provides an exhaustive list of the pleadings that are allowed in federal court." *Deckert v. Terre Haute Police Dep't*, No. 2:25-cv-00258-MPB-MJD, 2025 WL 3633365, at *1 (S.D. Ind. Dec. 15, 2025). It allows a plaintiff to file a "reply to an answer," but only "if the court orders one." FED.

13

R. CIV. P. 7(a)(7). Further, Rule 8(b)(6) provides that, "if a responsive pleading is not required, an allegation is considered denied or avoided." These two rules, taken together, "mean that affirmative defenses raised in an answer are automatically denied because no reply is permitted to an affirmative defense absent a court order." *Sunshine Imp & Exp Corp. v. Luxury Car Concierge, Inc.*, No. 13 C 8925, 2015 WL 2193808, at *3 (N.D. Ill. May 7, 2015); 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1279 (4th ed.).

Based on these rules, Plaintiffs' reply to Defendant's answer was not necessary for Plaintiffs to avoid affirmative defenses 2-5 and 8. In addition, since the Court did not order Plaintiffs to file a reply to Defendant's answer, the pleading is not authorized by Rule 7(a). For these reasons, the Court has discretion to strike the pleading from the docket. *See Deckert*, 2025 WL 3633365, at *1 (stating that an unauthorized filing that violates Rule 7(a) may be stricken). Here, it declines to do so. Defendant has not shown that the pleading will cause it any prejudice, and the Court does not believe that it does. As such, the Court will leave the filing on the docket and will simply disregard it.

## II.    <u>CONCLUSION</u>

For the foregoing reasons, the Court:

- **GRANTS in part** and **DENIES in part** Defendant's Motion to Dismiss (Doc. 37);

  - The motion is **GRANTED** as to Count 7 of the amended complaint and that claim is **DISMISSED with prejudice**;

  - The motion is **DENIED** in all other respects;

- **GRANTS in part** and **DENIES in part** Royal Banks and the Receiver's Motion to Dismiss (Doc. 70);

  - The motion is **GRANTED** as to Counts 2 and 3 of the amended counterclaim

14

and those claims are **DISMISSED without prejudice;**

o   The motion is **DENIED** in all other respects;

- **ORDERS** that Defendant shall have up to and including August 17, 2026, to file a second amended counterclaim;

- **DENIES** Plaintiffs' Motion to Strike (Doc. 64);

- **DENIES** Defendant's Motion to Strike (Doc. 73); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

The Court previously stated that it will set a new deadline to amend the pleadings after it rules on the parties' motions (Doc. 85). However, it declines to set a new deadline because it does not believe there is good cause to do so. Any further amendments to the pleadings (other than those authorized by this Order) shall comply with Federal Rule of Civil Procedure 15 and shall be permitted only upon a showing of good cause.

**IT IS SO ORDERED.**
**DATED**: July 20, 2026

_____
**J. PHIL GILBERT**
**United States District Judge**

15